**NEW RAILHEAD MANUFACTURING, L.L.C.**

v.

**VERMEER MANUFACTURING COMPANY and Earth Tool Company, L.L.C.**

No. Civ.A. 4:99–CV–355–Y.

United States District Court, N.D. Texas, Fort Worth Division.

Sept. 28, 2001.

Roy W. Hardin, Locke, Liddell & Sapp, Dallas, TX, Geoffrey A. Mantooth, Decker, Jones, McMackin, McClane, Hall & Bates, Fort Worth, TX, for Plaintiff.

Joseph F. Cleveland, Jr., Brackett & Ellis, Fort Worth, TX, Jon Trembath, John D. Gould, Merchant & Gould, Minneapolis, MN, for Vermeer Mfg. Co.

Craig Buck Florence, John W. Slates, III, Gardere Wynne Sewell, Dallas, TX, for Earth Tool Co.

Alan H. Gordon, Alan H. Gordon & Associates, Houston, TX, Pro se.

### ORDER GRANTING VERMEER'S MOTION FOR SUMMARY JUDGMENT

MEANS, District Judge.

Pending before the Court is the Motion for Summary Judgment that United States Patent No. 5,950,743 is Invalid, which was filed by defendant Vermeer Manufacturing Company on November 1, 2000. Plaintiff New Railhead Manufacturing, L.L.C. ("Railhead") filed a response in opposition to the motion on November 22, and Vermeer filed a reply to Railhead's response on December 7. Oral argument was heard regarding Vermeer's motion on September 19. After careful consideration of the briefs submitted by the parties, the evidence highlighted therein, the applicable law, and the arguments of counsel, the Court concludes that Vermeer's motion should be granted.

### I.  Facts

Railhead owns United States Patent 5,899,283 ("the '283 patent"), which claims an asymmetric drill bit used for horizontal directional drilling of rock. Railhead's "Incredibit" is an embodiment of the '283 patent. Railhead's '283 patent is based on an application filed November 12, 1997 as a continuation-in-part of a provisional patent application filed February 5, 1997.

Railhead also owns United States Patent 5,950,743 ("the '743 patent"), which claims "[a] method of horizontal directional drilling in rock, comprising the step of causing a drill bit at one end of a drill string to intermittently rotate as it digs in, stops rotation until the rock fractures, and then moves after fracture in a random, orbital intermittent motion." (Def.'s App. at 11.) The parties agree, for purposes of this motion, that "the natural operation of the Railhead bit in rock causes the bit to practice the method claimed in the '743 patent." (Def.'s Br. at 6–7.) Railhead's '743 patent is based on a patent application filed on November 12, 1997 as a continuation-in-part of the same provisional application filed on February 5, 1997.

The drill bit that is the subject of the '283 patent was invented by David Cox, co-owner of Railhead, in late 1995. Sometime between Christmas 1995 and New Year's 1996, Cox delivered a version of this bit to Earl Freeman, an employee of one of Railhead's customers, Eagle Pipeline, allegedly for experimentation.

Freeman used the bit approximately six times on various Eagle Pipeline jobs throughout January 1996.

Railhead filed this lawsuit contending that the "Trihawk" drill bit manufactured by defendant Earth Tool Company, L.L.C. ("Earth Tool") infringes Railhead's '283 patent. Railhead further contends that Vermeer has obtained Trihawk drill bits from Earth Tool and distributed them to retailers and, in so doing, has infringed the '283 patent and induced others to practice the method claimed in the '743 patent. Vermeer's motion, which is limited to the claims regarding the '743 patent, seeks a summary judgment that the '743 patent is invalid because, inter alia, the drilling method claimed in the patent was publicly used more than one year prior to the filing date of the provisional application on which the '743 patent is allegedly based.

## II. Summary Judgment Standard

The summary-judgment standard on a patent claim is the same as the standard for other claims. *Avia Group Int'l v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1560–61 (Fed.Cir.1988). Thus, Vermeer is entitled to summary judgment if it demonstrates "that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." FED. R.Crv.P. 56(c). All reasonable factual inferences must be drawn in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ A patent is, however, presumed to be valid. 35 U.S.C.A. § 282 (West Supp. 2001). As a result, "the burden of proving invalidity [is] on the attacker." *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1536 (Fed.Cir.1984). Consequently, on summary judgment, Vermeer's "burden of demonstrating an entitlement to judgment as a matter of law includes the burden of overcoming the presumption of patent validity found in 35 U.S.C. § 282." *Cable*

*Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1022 (Fed.Cir.1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358–61 (Fed.Cir.1999). "The standard of proof of facts necessary to support a legal conclusion of invalidity is 'clear and convincing.'" *Id.* (quoting *R.R. Dynamics, Inc. v. Stucki Co.*, 727 F.2d 1506, 1516 (Fed.Cir.1984)). As a result, in order to be entitled to summary judgment, Vermeer must demonstrate that there is no genuine issue of material fact regarding the patent's validity and that clear and convincing evidence demonstrates that the patent is invalid.

## III. Analysis

Vermeer contends that Railhead's '743 patent is invalid because it was in public use more than a year prior to the date the patent application was filed. A person is not entitled to a patent if "the invention was ... in public use ... in this country more than one year prior to the date of the application for patent in the United States." 35 U.S.C.A. § 102(b) (West 1984). Thus, the "critical date" in analyzing the public-use bar found in § 102(b) is one year prior to the date the patent application was filed.

Railhead's patent application was filed on November 12, 1997. Several months prior to that, however, Railhead filed a provisional patent application under 35 U.S.C. § 111(b). A provisional application must include a specification and drawing, but, unlike a patent application, does not need to include a claim. 35 U.S.C.A. § 111(b)(1) & (2) (West Supp.2001). Railhead contends that its '743 patent is entitled to the priority of the provisional application. *See* 35 U.S.C.A. § 119(e)(1) (West Supp.2001). For purposes of its public-use argument, Vermeer assumes that Railhead is correct. As a result, the February 5,

1997 date of filing the provisional application will be used in calculating the critical date for § 102(b)'s public-use bar. Vermeer therefore must demonstrate by clear and convincing evidence that the method claimed in the '743 patent was publicly used more than one year prior to February 5, 1997.

■ In support of its contention, Vermeer points to the uses of Railhead's drill bit made by Earl Freeman. The evidence reflects that Freeman used Railhead's bit on at least six occasions at various Eagle Pipeline commercial jobs during January 1996.[1] The jobs were performed by a crew of up to six people on "public land on the side of the road." (Def.'s App. at 51–52.) As previously mentioned, the parties agree that the natural operation of the Railhead bit causes the bit to practice the method claimed in the '743 patent. Thus, Freeman used the '743 patent's claimed method of drilling on commercial jobs in a public setting at least six times during the month. Vermeer has made a prima facie showing that Freeman engaged in public uses of the '743 patent's method.

■ In response, Railhead attempts to demonstrate that Freeman's use was experimental. If the use was experimental, it is not considered a public use under § 102(b). *Elizabeth v. Pavement Co.,* 97 U.S. 126, 134, 24 L.Ed. 1000 (1877). Despite the presumption of patent validity, Vermeer, having made a prima facie showing of public use, does not have the burden to prove that the use was *not* experimental; rather, in order now to create an issue of fact, Railhead must produce convincing evidence of experimental use:

The trial court did not shift to [the patent owner] the burden of proving the validity of the '548 patent. Instead, the trial court correctly imposed on [the patent owner] the burden of going forward with convincing evidence to counter [the challenger's] prima facie showing of invalidating public use. As this court said in *TP Laboratories [v. Professional Positioners, Inc.],* 724 F.2d [965] at 971, 220 USPQ at 582 [(Fed.Cir.1984)]:

> Thus, the court should ... [look] at all of the evidence put forth by both parties and should ... [decide] whether the entirety of the evidence led to the conclusion that there had been "public use." This does not mean, of course, that the challenger has the burden of proving that the use is not experimental. Nor does it mean that the patent owner is relieved of explanation. It means that if a prima facie case is made of public use, *the patent owner must come forward with convincing evidence to counter that showing.*

*Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1537 (1984); *see also MSM Invs. Co., L.L.C. v. Carolwood Corp.,* 70 F.Supp.2d 1044, 1052–53 (N.D.Cal.1999), *aff'd,* 259 F.3d 1335 (Fed.Cir.2001).

■ Railhead has failed to present convincing evidence that Freeman's January 1996 uses of the '743 patent's drilling *method* were experimental. It is well settled that "the experimental use exception does not apply to experiments performed with respect to nonclaimed features of an invention." *In re Brigance,* 792 F.2d 1103, 1109 (Fed.Cir.1986); *see also D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d

---

**1.** Although Vermeer has not cited any direct evidence specifically demonstrating that Eagle Pipeline was paid for those jobs, Railhead admits that the bit was used on Eagle Pipeline's "commercial job sites," (Def.'s App. at 64), and it is proper to infer from that admission and from the evidence presented that these were jobs being performed by Eagle for customers in the normal course of its business and, therefore, for pay. *See* Def.'s App. at 47–52.

1144, 1149–51 (Fed.Cir.1983); *In re Smith,* 714 F.2d 1127, 1136 (Fed.Cir.1983). Railhead's drill bit is not a claimed feature of the '743 patent; rather, Railhead obtained a separate patent—the '283 patent—for the drill bit. In its response to Vermeer's motion, however, Railhead focuses on evidence of experimentation regarding the drill bit. For example, Railhead notes that "Cox and Freeman entered into a secrecy agreement pursuant to which Freeman would test the bit in actual field conditions and report back to Cox on how it performed," (Pl.'s Resp. at 11,) and that "Cox directed Freeman to use the bit in rocky conditions and to report back so Cox could learn how the bit operated and experiment with additional designs," (Pl.'s Resp. at 12). Railhead also points out that different bit configurations were tried, that one bit was returned for modifications because it did not steer properly, that Cox told Railhead's attorney that "experimental use of one [drill] prototype" had occurred prior to late February, and that a September 1996 magazine article "reports that [the] new Railhead drill bit is under development and being tested." (Pl.'s Resp. at 14, 17.) All of Railhead's evidence of experimental use pertains to the allegedly experimental uses of the drill *bit;* Railhead presents no specific evidence tending to demonstrate that Freeman's uses constituted experimentation regarding the drilling *method.* Consequently, Railhead has failed to counter Vermeer's evidence of Freeman's public uses of the drilling method prior to the critical date with evidence demonstrating that Freeman's uses of the method were instead experimental. As a result, Vermeer is entitled to summary judgment that the '743 patent is invalid.

## IV. Conclusion

For the foregoing reasons, Vermeer's Motion for Summary Judgment that United States Patent No. 5,950,743 is Invalid [document number 86–1] is hereby GRANTED. Vermeer has demonstrated by clear and convincing evidence that Railhead's '743 patent is invalid because it was in public use prior to February 5, 1996.